Approved: _____
DAVID A. MARKEWITZ
Assistant United States Attorney

23MJ5426

Before:   HONORABLE VICTORIA REZNIK
United States Magistrate Judge
Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | **COMPLAINT** |
| v. | Violations of 8 U.S.C. § 1324, and 18 U.S.C. § 1201 |
| MARIO ELPIDIO CHAVEZ MILLAN, | COUNTY OF OFFENSE: WESTCHESTER |
| Defendant. | |

SOUTHERN DISTRICT OF NEW YORK, ss.:

Robert Lombardi, being duly sworn, deposes and says that he is a Task Force Officer with the Federal Bureau of Investigations ("FBI"), and charges as follows:

### COUNT ONE
(Transporting Illegal Aliens)

1.     Between on or about July 8, 2023, and on or about July 10, 2023, in the Southern District of New York and elsewhere, MARIO ELPIDIO CHAVEZ MILLAN, the defendant, knowing or in reckless disregard of the fact that approximately six aliens had come to, entered, or remained in the United States in violation of law, transported, or moved such aliens across state lines to the Southern District of New York, in furtherance of such violations of law, to wit, CHAVEZ MILLAN drove approximately six individuals from New Mexico to the Southern District of New York for commercial gain knowing they had entered the country unlawfully.

(Title 8, United States Code, Section 1324(a)(1)(A)(ii).)

### COUNT TWO
(Kidnapping)

2.     On or about July 10, 2023, in the Southern District of New York and elsewhere, MARIO ELPIDIO CHAVEZ MILLAN, the defendant, knowingly did seize, confine, inveigle, decoy, kidnap, abduct, and carry away and hold for ransom and reward and otherwise a person, and aided and abetted the same, when CHAVEZ MILLAN traveled in interstate and foreign commerce and used the mail and a means, facility, and instrumentality of interstate and foreign commerce in committing and furtherance of the commission of the offense, to wit, CHAVEZ MILLAN drove several individuals from New Mexico to the Southern District of New York and demanded $1,000 from each victim in exchange for releasing them.

(Title 18, United States Code, Section 1201(a)(1).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3.　　I am a Task Force Officer with the FBI and a member of the Westchester Safe Streets Task Force. I have been a Task Force Officer with the FBI for approximately five years.

4.　　I have been personally involved in the investigation of this matter. This affidavit is based in part upon my conversations with other law enforcement officers and others, and my examination of records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Law Enforcement Apprehends the Defendant

5.　　On or about July 10, 2023, the New York State Police in the Town of Cortlandt, New York, received a report from an individual ("Individual-1") that the individual's relative ("Victim-1") had entered the country illegally with the assistance of "coyotes," and was being transported by a man in the United States working with the coyotes.[1] Individual-1 further informed the State Police that this man had told Victim-1 that he was not going to release Victim-1 unless Victim-1 or his/her family paid the man $1,000 in addition to the substantial sum of money that Victim-1 had already paid to the coyotes.

6.　　That evening, State Police told Individual-1 to arrange payment to the man, and to set up a meeting to recover Victim-1. Law enforcement officers thereafter accompanied Individual-1 and surveilled him meet the man transporting Victim-1 in a parking lot in the Town of Cortlandt, NY. Based on a conversation with State Police officers, I understand that Individual-1 sent the man transporting Victim-1 an electronic payment. While that payment was pending, the man stayed in his car. But once the payment went through, the man allowed Victim-1 to exit the car, and the man drove off.

7.　　Shortly thereafter, State Police executed a traffic stop of the man's vehicle, which contained approximately five individuals in addition to the driver. The car, which had only Mexican registration plates, was impounded, and the passengers were taken back to the State Police barracks for questioning. During that process, law enforcement recovered a Chihuahua, Mexico driver's license from the car's driver, which bore his photo and the name MARIO ELPIDIO CHAVEZ MILLAN.

---

[1] "Coyote" is the term for those who facilitate unlawful entry to the United States from Mexico for commercial gain.

### Victim Interviews

8.      After those car passengers and Victim-1 arrived at the barracks, several law enforcement officers, including myself, arrived on the scene and interviewed them.[2]  Each of those interviewees reported that they had entered the country illegally with the help of coyotes, and that they were being driven by CHAVEZ MILLAN from in or about New Mexico to other states throughout the country.  Each of the interviewees also reported that they were told by the coyotes that the fee they paid to the coyotes, ranging from approximately $10,000 to approximately $18,000, would cover their transportation to their final destination in the United States.  In particular:

      a.      Victim-1 reported that, with the aid of a coyote, he/she illegally entered the United States by climbing a border wall in Juarez, Mexico.  Victim-1 met CHAVEZ MILLAN in or about New Mexico, and CHAVEZ MILLAN was supposed to drive Victim-1 to meet Individual-1 in the Town of Cortlandt, NY.  Victim-1 stated that this transportation was supposed to be included in the fee he/she paid to the coyotes prior to meeting CHAVEZ MILLAN.  But during the drive from New Mexico to New York, CHAVEZ MILLAN informed Victim-1 that Victim-1 owed him $1,000 in addition to what Victim-1 had paid to the coyotes already, that CHAVEZ MILLAN would not let Victim-1 leave without paying that fee, and that CHAVEZ MILLAN had previously killed someone for running away without paying.  Victim-1 also reported that CHAVEZ MILLAN took his/her phone during the drive, to deter Victim-1 from running.

      b.      Victim-2 reported that he/she illegally entered the United States by climbing over a boarder wall in Mexico.  Victim-2 told law enforcement that he/she was picked up by CHAVEZ MILLAN in New Mexico, and that CHAVEZ MILLAN was supposed to deliver Victim-2 to another state.  Victim-2 understood that the cost of this transportation was covered by a fee that Victim-2 had already paid to coyotes.  But during the drive, approximately 24 hours before the car was eventually stopped by law enforcement on or about July 10, 2023, CHAVEZ MILLAN reportedly demanded an additional $1,000 from Victim-2.  Victim-2 told law enforcement that he/she understood that CHAVEZ MILLAN would not let him/her leave the vehicle unless Victim-2 or his/her family paid CHAVEZ MILLAN the additional money.

      c.      Victim-3 reported that he/she came from Honduras, and his/her family paid coyotes to smuggle him/her into the United States.  Victim-3 told law enforcement that once he/she entered the United States, he/she met CHAVEZ MILLAN in New Mexico and CHAVEZ MILLAN was supposed to drive Victim-3 from New Mexico to another state.  During that drive, however, approximately 24 hours before the car was eventually stopped by law enforcement on or about July 10, 2023, CHAVEZ MILLAN demanded an extra $1,000 in addition to what Victim-3 had already paid to the coyotes.  Victim-3 stated that CHAVEZ MILLAN locked the car doors and told Victim-3 that he had previously killed someone for failing to pay his fee and attempting to flee.

---

[2] Because each of the passengers speak only Spanish, the interviews were conducted with Spanish-fluent officers.

d.      Victim-4 stated that he/she illegally entered the country through a hole in a border fence.  Victim-4 told law enforcement that he/she met CHAVEZ MILLAN after entering the country, and that CHAVEZ MILLAN was supposed to drive Victim-4 from New Mexico to another state.  During that drive, however, approximately 24 hours before the car was eventually stopped by law enforcement on or about July 10, 2023, CHAVEZ MILLAN demanded an extra $1,000 in addition to what Victim-4 had already paid to coyotes.  Victim-4 reported that CHAVEZ MILLAN told him/her that Victim-4 was not allowed to leave until CHAVEZ MILLAN was paid, and that CHAVEZ MILLAN indicated that he had previously killed someone who tried to run without paying CHAVEZ MILLAN his fee.

e.      Victim-5 stated that he/she illegally entered the country and met CHAVEZ MILLAN in New Mexico.  Victim-5 stated that he/she sat in the back of the car during the ride, and that his/her destination was one of the last stops that CHAVEZ MILLAN was going to be making.  While Victim-5 reported overhearing CHAVEZ MILLAN tell other victims that they would not be allowed to leave without paying CHAVEZ MILLAN a new $1,000 fee, and that CHAVEZ MILLAN had previously killed someone who attempted to run away, Victim-5 did not report being personally asked to pay that fee by the time the vehicle was stopped by law enforcement.

f.      Victim-6 stated that he/she illegally entered the country and met CHAVEZ MILLAN in New Mexico.  Victim-6 stated that he/she sat in the back of the car during the ride and did not personally get asked to pay CHAVEZ MILLAN $1,000, nor did he/she overhear CHAVEZ MILLAN ask other passengers to pay him $1,000.

**Interview of the Defendant**

9.      Other law enforcement officers and I subsequently interviewed MARIO ELPIDIO CHAVEZ MILLAN, the defendant, after he was read his *Miranda* rights and agreed to speak to law enforcement.[3]

10.      During that interview, MARIO ELPIDIO CHAVEZ MILLAN, the defendant, stated in substance and in part, the following:

a.      CHAVEZ MILLAN admitted to picking up the individuals that were found in his car on or about July 8, 2023, in Albuquerque, New Mexico.  CHAVEZ MILLAN claimed that he then drove the group from New Mexico to New York over the next two days.  During that trip, he stated that the group spent one night in Tulsa, Oklahoma, and another night in Ohio.

b.      CHAVEZ MILLAN admitted that he knew that the individuals he was transporting between on or about July 8, 2023, and on or about July 10, 2023, had entered the United States unlawfully.

---

[3] Because CHAVEZ MILLAN speaks only Spanish, his rights were provided in Spanish and the interview was conducted with Spanish-fluent officers.

c.      CHAVEZ MILLAN stated that he has transported individuals similarly throughout the United States on several occasions before July 8, 2023.

d.      CHAVEZ MILLAN admitted that he understands that the service he provides aids cartels and coyotes in smuggling illegal aliens into the country.

e.      CHAVEZ MILLAN admitted to telling the individuals he was transporting between on or about July 8, 2023 and on or about July 10, 2023, that he had previously killed someone who attempted to run without paying CHAVEZ MILLAN his requested fee.  Although CHAVEZ MILLAN claimed that this statement was meant as a joke, he acknowledged that he understood the passengers in his car took the statement as a threat.

WHEREFORE, I respectfully request that MARIO ELPIDIO CHAVEZ MILLAN, the defendant, be imprisoned or bailed, as the case may be.

Robert Lombardi
Task Force Officer
FBI


Sworn to me this 11 day of July, 2023.

HONORABLE VICTORIA REZNIK
United States Magistrate Judge
Southern District of New York